IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-149

No. COA20-211

Filed 20 April 2021

Burke County, Nos. 18 CRS 1393-94

STATE OF NORTH CAROLINA

v.

CAMERON DIAMOND DEJUAN WALTON

Appeal by defendant from judgment entered 8 October 2019 by Judge Julia

Lynn Gullett in Burke County Superior Court. Heard in the Court of Appeals

23 February 2021.

Attorney General Joshua H. Stein, by Assistant Attorney General T. Hill Davis,
III, for the State.

Helton, Cody & Associates, by Blair E. Cody, III, for defendant.

ARROWOOD, Judge.

¶1 Cameron Diamond Dejuan Walton (“defendant”) appeals from judgment

entered 8 October 2019 following his guilty plea to felony trafficking in opium.

Defendant contends that the trial court erred in denying his motions to suppress and

dismiss and in denying his request to make an offer of proof. For the following

reasons, we affirm the trial court’s judgment.

I. Background
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

¶2 On 13 December 2018, a Burke County grand jury indicted defendant for

trafficking in opium or heroin by possession; possession with intent to manufacture,

sell, or deliver cocaine; carrying a concealed weapon; and possession of a controlled

substance on prison/jail premises. Defendant filed a motion to suppress the evidence

supporting his indictment on 12 August 2019. On 30 August 2019, defendant filed

an amended motion to suppress, and on 2 October 2019 defendant filed a “Motion to

Dismiss/Suppress.”

¶3 Defendant’s motions were heard at the 7 October 2019 criminal session of

Burke County Superior Court. The relevant facts from the suppression hearing are

as follows.

¶4 On 5 April 2018, Officer Jesse Simmons (“Officer Simmons”) of the Valdese

Police Department observed a gold four-door Lexus traveling at an estimated 45 miles

per hour in a 35 mile per hour zone shortly after midnight. Officer Simmons verified

the speed with a radar gun and upon following the vehicle observed that he could not

see inside the vehicle’s windows. Officer Simmons initiated a traffic stop in a nearby

parking lot.

¶5 Upon approaching the vehicle, Officer Simmons noted that defendant was the

driver and sole occupant and informed defendant that he had been stopped for

speeding and window tint. Officer Simmons observed that the windows were not

illegally tinted but were instead darkened by electric window shades. While speaking
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

with defendant, Officer Simmons noticed “a slight odor of marijuana coming from the

car[,]” that seemed “covered up with some kind of cologne.” At the hearing, Officer

Simmons testified that he had received training in the detection of marijuana by

scent.

¶6 After the initial conversation, Officer Simmons returned to his car to begin

checking the status of defendant’s driver’s license and to determine whether

defendant had any warrants. Officer Simmons also called Deputy Tim Branch

(“Deputy Branch”) of the Burke County Sheriff’s Office to bring his K-9 unit to

perform a drug sniff of defendant’s vehicle. Officer Tyler Angley (“Officer Angley”) of

the Valdese Police Department was also dispatched to serve as a cover officer during

the stop.

¶7 Officer Simmons returned to defendant’s vehicle to perform a field sobriety test

on the basis of defendant’s speeding and erratic turn into the parking lot. Officer

Simmons noted that the scent of cologne had faded and the odor of marijuana had

grown stronger. After defendant got out of his car, Officer Simmons administered

the horizontal gaze nystagmus (“HGN”) field sobriety test and observed no sign of

impairment. While administering the test, Officer Simmons informed defendant that

he “smelled marijuana coming from the car[,]” which defendant denied.

¶8 Officer Simmons asked defendant to return to his vehicle, and Officer Simmons

returned to his car to issue a written warning for speeding and unsafe movement.
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

While Officer Simmons was in his car writing the warning ticket, Deputy Branch

arrived on the scene with his dog and performed a sniff search of defendant’s vehicle.

The dog alerted to the presence of narcotics in defendant’s vehicle.

¶9 After Deputy Branch informed Officer Simmons that the dog had alerted on

defendant’s car, Officer Simmons returned to defendant’s vehicle and asked “if there

was anything he would like to tell me about in the vehicle.” Defendant said no.

Officer Simmons asked defendant to step out of the vehicle, but defendant refused;

when Officer Simmons opened the car door and repeated his request, defendant shut

and locked the door and “placed his hands on the gear shifter as if he was going to

put the car into gear.” Officer Simmons requested backup and drew his taser,

advising defendant that he would be tased if he did not exit the vehicle. Defendant

then exited the vehicle.

¶ 10 Officer Simmons asked defendant if there was anything in the vehicle.

Defendant stated that there was a gun under the seat. Officer Simmons entered the

vehicle to retrieve the gun, and in a subsequent search found cocaine, digital scales,

synthetic opioids, and $1,483.00 in cash.

¶ 11 The time elapsed between the initial stop and defendant’s refusal to exit his

vehicle was sixteen minutes. The time elapsed between the initial stop and the

arrival of the police dog was twelve minutes. The police dog and his handler were at

the scene for a total of eight minutes, and the dog took less than one minute to
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

perform the sniff.

¶ 12 At the hearing, the State introduced evidence regarding the training and

reliability of the police dog. Deputy Branch testified that the dog was certified for

narcotics detection by both the United States Law Enforcement Canine Association

and the North American Police Working Dog Association.

¶ 13 Defendant’s trial counsel offered the testimony of Officer Angley, the cover

officer at the scene, and Toni Bartlett (“Bartlett”), whose home defendant had left

just prior to being stopped. This testimony was offered to provide evidence of the

relationship between Officer Angley and Bartlett’s daughter, but most of the evidence

was excluded by the trial court. Defendant was allowed to make an offer of proof with

a limited scope not to include proof related to any relationship between Officer Angley

and Bartlett’s daughter.

¶ 14 At the conclusion of the hearing on 8 October 2019, the trial court denied

defendant’s motion to suppress. Defendant subsequently pleaded guilty to the charge

of felony trafficking in opium or heroin by possession with the remaining charges

dismissed. The trial court sentenced defendant to a term of 16 to 29 months

imprisonment, suspended on the condition that defendant serve 30 months of

supervised probation, as well as an intermediate sanction of 7 months imprisonment.

II. Discussion

¶ 15 Defendant contends that the trial court erred in denying the motions to
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

suppress and to dismiss, in denying defendant’s request to make an offer of proof

during the pretrial motion to suppress, and in finding that the police dog was

proficient in detecting drugs.

A. Motions to Suppress & Dismiss

¶ 16 Defendant argues that the trial court erred in denying the motions to suppress

and to dismiss because there was an improper prolonging of the stop, and the stop

was made without probable cause or reasonable and articulable suspicion. We

disagree.

1. Standard of Review

¶ 17 “ ‘The standard of review in evaluating the denial of a motion to suppress is

whether competent evidence supports the trial court’s findings of fact and whether

the findings of fact support the conclusions of law.’ ” State v. Jackson, 368 N.C. 75,

78, 772 S.E.2d 847, 849 (2015) (quoting State v. Otto, 366 N.C. 134, 136, 726 S.E.2d

824, 827 (2012)). A trial court’s findings of fact are conclusive on appeal if supported

by competent evidence, even if the evidence is conflicting. State v. Campbell, 188

N.C. App. 701, 704, 656 S.E.2d 721, 724 (2008) (quotation marks and citation

omitted). “[O]nly a material conflict in the evidence—one that potentially affects the

outcome of the suppression motion—must be resolved by explicit factual findings that

show the basis for the trial court’s ruling.” State v. Bartlett, 368 N.C. 309, 312, 776

S.E.2d 672, 674 (2015) (citations omitted).
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

¶ 18 If there is no material conflict in the evidence, this Court may review the

undisputed factual record when determining whether the trial court’s ruling was

correct. State v. Lovin, 339 N.C. 695, 706, 454 S.E.2d 229, 235 (1995). “If there is no

conflict in the evidence on a fact, failure to find that fact is not error[,]” and the finding

is implied by the ruling of the court. State v. Richmond, 215 N.C. App. 475, 479, 715

S.E.2d 581, 585 (2011) (citation omitted).

2. Reasonable Suspicion

¶ 19 A traffic stop is a seizure even if the purpose of the stop is limited and the

resulting detention is brief. State v. Styles, 362 N.C. 412, 414, 665 S.E.2d 438, 439
(2008) (quotation marks and citation omitted). The necessary standard for stops

based on traffic violations is “based on specific and articulable facts, as well as the

rational inferences from those facts, as viewed through the eyes of a reasonable,

cautious officer, guided by his experience and training.” State v. Watkins, 337 N.C.

437, 441, 446 S.E.2d 67, 70 (1994) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 20 L. Ed.

2d 889, 906 (1968)). To determine whether reasonable suspicion exists, courts must

look to the totality of the circumstances as viewed from the standpoint of an

objectively reasonable police officer. State v. Johnson, 370 N.C. 32, 34-35, 803 S.E.2d

137, 139 (2017) (citations omitted). The reasonable suspicion standard applies to all

traffic stops for traffic violations “whether the traffic violation was readily observed

or merely suspected.” Styles, 362 N.C. at 415, 665 S.E.2d at 440. This standard is
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

less demanding than probable cause, and “requires a showing considerably less than

preponderance of the evidence.” Id. at 414, 665 S.E.2d at 439 (citation omitted). The

standard is satisfied if an officer reasonably believes that a driver has violated the

law. Johnson, 370 N.C. at 38, 803 S.E.2d at 141.

¶ 20 In this case, there was competent evidence to support the trial court’s

determination that Officer Simmons had reasonable suspicion to stop defendant’s car.

Officer Simmons personally observed defendant driving his car at a speed of 45 miles

per hour in violation of the posted 35 mile per hour speed limit and verified his

observation by measuring defendant’s speed with the radar gun. In addition to the

speeding violation, which would alone be sufficient to satisfy the reasonable suspicion

standard, Officer Simmons also observed that defendant’s car had what appeared to

be tinted windows, allowing Officer Simmons to reasonably believe that defendant

was violating a window tinting law. Accordingly, there was competent evidence to

support the trial court’s determination that Officer Simmons had reasonable

suspicion to initiate the traffic stop.

¶ 21 Defendant additionally contends that Officer Simmons impermissibly

extended the stop beyond his investigation into speeding and window tint to include

impaired driving. We disagree.

¶ 22 The scope of detention incident to a traffic stop generally must be tailored to

the purpose of the stop. State v. Kincaid, 147 N.C. App. 94, 98, 555 S.E.2d 294, 298
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

(2001). A traffic stop should generally not extend the duration of the stop beyond the

time reasonably required to complete the “mission” of the stop, as well as attending

to related safety concerns. Rodriguez v. United States, 575 U.S. 348, 354, 191 L. Ed.

2d 492, 498 (2015). An officer may inquire into matters unrelated to the justification

for the stop, however, “so long as those inquiries do not measurably extend the

duration of the stop.” Arizona v. Johnson, 555 U.S. 323, 333, 172 L. Ed. 2d 694, 704
(2009) (citation omitted). Stops may be extended if there is additional reasonable

suspicion to do so. State v. Heien, 226 N.C. App. 280, 286-87, 741 S.E.2d 1, 5 (2013).

¶ 23 In this case, Officer Simmons initially stopped defendant for speeding and a

suspected window tint violation and was permitted to continue the stop for the length

of time required to conduct initial license and warrant checks and to issue the written

warning. Officer Simmons extended the stop for further investigation into the odor

of marijuana coming from defendant’s car, which was based on the additional

reasonable suspicion of Officer Simmons’ observation of a marijuana odor. The time

elapsed between the initial stop and the arrival of the police dog was twelve minutes,

and the police dog was on the scene for eight minutes. The police dog performed the

sniff and alerted on defendant’s car while Officer Simmons was still in the process of

writing the warning ticket. Because the mission of the initial stop had not yet been

completed at the time the police dog alerted and in light of the circumstances, we hold

that there was sufficient reasonable suspicion for the duration of the stop and that
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

the stop was not impermissibly extended.

3. Probable Cause

¶ 24 Defendant argues there was no probable cause to extend the stop after Officer

Simmons determined there was not a window tint violation. We disagree.

¶ 25 Probable cause is not a “finely tuned standard” but instead requires “the kind

of ‘fair probability’ on which ‘reasonable and prudent [people,] not legal technicians,

act.’ ” Florida v. Harris, 568 U.S. 237, 243-44, 185 L. Ed. 2d 61, 67 (2013). The odor

of marijuana “may form the basis of probable cause for a warrantless search of a

vehicle.” State v. Corpening, 109 N.C. App. 586, 589, 427 S.E.2d 892, 894-95 (1993)

(citing State v. Greenwood, 301 N.C. 705, 273 S.E.2d 438 (1981)). Because illegal

drugs are easily hidden or destroyed, the odor of marijuana generally creates “exigent

circumstances justifying an immediate warrantless search.” State v. Yates, 162 N.C.

App. 118, 123, 589 S.E.2d 902, 905 (2004).

¶ 26 Here, Officer Simmons testified that although he incorrectly suspected that

defendant had committed a window tint violation, he could smell marijuana with

increasing intensity throughout the stop. Officer Simmons also provided testimony

regarding his training and expertise in recognizing the odor of marijuana. The police

dog’s alert then provided additional probable cause to search the vehicle. Based on

these circumstances, the trial court did not err in finding that there was probable

cause to search defendant’s vehicle.
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

B. Offer of Proof

¶ 27 Defendant next contends that the trial court erred in denying defendant’s

request to make an offer of proof during the pretrial motion to dismiss. We disagree.

¶ 28 For a party to preserve the exclusion of evidence for appellate review, the

significance of the excluded evidence must be apparent in the record and “a specific

offer of proof is required unless the significance of the evidence is obvious from the

record.” State v. Simpson, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (citation

omitted). A trial court may limit an offer of proof by allowing counsel to articulate

what a defendant’s showing would have been by identifying witnesses and presenting

a detailed forecast of evidence for the record. State v. White, 349 N.C. 535, 567, 508

S.E.2d 253, 273 (1998).

¶ 29 The ultimate question is whether a defendant is prejudiced by the denial of an

offer of proof. State v. Chapman, 294 N.C. 407, 415, 241 S.E.2d 667, 672 (1978). The

essential content or substance of the witness’s testimony must be shown before

ascertaining whether prejudicial error occurred. Simpson, 314 N.C. at 370, 334

S.E.2d at 60 (citation omitted). If there is no reasonable possibility that the trial

court’s denial affected the result, any error in refusing the offer is harmless. State v.

Mackey, 352 N.C. 650, 661, 535 S.E.2d 555, 561 (2000).

¶ 30 In this case, defendant’s trial counsel was permitted to make an offer of proof

after articulating that Bartlett’s daughter’s testimony regarding the relationship was
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

relevant in the context of the stop. This offer of proof provided a forecast of evidence

showing that Officer Angley had a prior relationship with Bartlett’s daughter, that

Officer Angley had eaten dinner at the Bartlett residence on several occasions, and

that defendant had left the Bartlett residence just prior to the stop. The trial court

only refused to allow a specific offer of proof with respect to the particular details of

the relationship between Officer Angley and Bartlett’s daughter on the grounds that

these details were irrelevant to the probable cause at issue in the case. However,

because the fact of the relationship was presented to the court, there was sufficient

detail forecasted in the offer of proof.

¶ 31 Furthermore, the development of reasonable articulable suspicion was formed

independently by Officer Simmons; Officer Angley testified that his involvement at

the scene was “very little,” and his testimony was largely irrelevant to the trial court’s

findings of fact. Due to the limited connection between the excluded evidence and the

trial court’s ultimate findings and conclusions, we hold that no prejudicial error

occurred.

C. Police Dog Proficiency

¶ 32 Defendant argues that the trial court erred in finding that the police dog was

proficient in detecting drugs, alleging that the police dog and Deputy Branch were

not in compliance with department policies as to training and utilization and that the

police dog’s certification had expired. We disagree.
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

¶ 33 The United States Supreme Court has provided a framework for assessing a

police dog’s reliability, emphasizing that a police dog’s reliability is best measured in

controlled testing environments:

[E]vidence of a dog’s satisfactory performance in a
certification or training program can itself provide
sufficient reason to trust his alert. If a bona fide
organization has certified a dog after testing his reliability
in a controlled setting, a court can presume (subject to any
conflicting evidence offered) that the dog’s alert provides
probable cause to search. The same is true, even in the
absence of formal certification, if the dog has recently and
successfully completed a training program that evaluated
his proficiency in locating drugs. After all, law
enforcement units have their own strong incentive to use
effective training and certification programs, because only
accurate drug-detection dogs enable officers to locate
contraband without incurring unnecessary risks or
wasting limited time and resources.

Harris, 568 U.S. at 246-47, 185 L. Ed. 2d at 69. A defendant may challenge evidence

of a dog’s reliability by contesting the adequacy of a certification or training program,

how the dog or handler performed in those assessments, and how the dog or handler

has performed in the field. Id. at 247, 185 L. Ed. 2d at 69. “The question—similar to

every inquiry into probable cause—is whether all the facts surrounding a dog’s alert,

viewed through the lens of common sense, would make a reasonably prudent person

think that a search would reveal contraband or evidence of a crime.” Id. at 248, 185

L. Ed. 2d at 70.

¶ 34 In this case, the State presented evidence that the police dog had been certified
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

a total of five times by two different organizations, with three certificates prior to the

search in this case and two certifications between the time of the search and the

suppression hearing. Although defendant argues that one of the prior certifications

was expired at the time of the search, defendant makes no argument that the

substance of the certification was deficient. In Harris, the Supreme Court found the

dog to be reliable even though its certification had expired one year prior to the search

at issue. Id. at 248, 185 L. E. 2d. at 70. The certification in this case similarly expired

less than one year before the search at issue. Furthermore, the dog in this case did

still have one non-expired certification still in effect. Accordingly, there was sufficient

evidence of the dog’s certification and training for the reliability analysis.

¶ 35 Defendant further alleges error with respect to Deputy Branch’s adherence to

the utilization policy and departmental guidelines, specifically regarding the gap in

training between 11 January 2018 and 31 January 2019. Defendant also

acknowledges that North Carolina does not currently require any specific service dog

training or requirements, although Burke County does require animals to be trained

as a part of their policy requirements. Although the substance of the police dog’s

training and Deputy Branch’s adherence to relevant guidelines are part of the overall

inquiry, whether the dog is reliable is determined in the totality of the circumstances.

Based on the totality of the circumstances in this case, the trial court did not err in

finding that the police dog was reliable and proficient.
 STATE V. WALTON

2021-NCCOA-149

Opinion of the Court

III. Conclusion

¶ 36 For the forgoing reasons, we hold that the trial court did not err in denying

defendant’s motions to suppress and to dismiss, and further hold that the trial court

did not otherwise err in defendant’s case.

AFFIRMED.

Judges CARPENTER and GORE concur.